No. 25-9003

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

IN RE: CHARLES MUSZYNSKI,

Debtor.

---

CHARLES MUSZYNSKI,

Appellent,

v.

ROBERTO ROMAN VALENTIN, Chapter 7 Trustee,

Appellee,

---

## APPEAL FROM A JUDGMENT OF
## UNITED STATES BANKRUPTCY APPELLATE PANEL
## FOR THE FIRST CIRCUIT

and,

MILLENNIUM FUNDING, INC., on behalf of itself and as successor in interest to LF2 Productions, Inc.; VOLTAGE HOLDINGS, LLC; AMBI DISTRIBUTION CORP., on behalf of itself and as successor in interest to Paradox Studios, Rupture CAL, Inc., FSMQ Film, LLC, and FW Productions, LLC; HANNIBAL MEDIA, INC., on behalf of itself and as successor in interest to I Am Wrath Production, Inc. and Justice Everywhere Productions LLC; AFTER PRODUCTIONS, LLC; AFTER II MOVIE, LLC; MORGAN CREEK PRODUCTIONS, INC.; VOLTAGE PICTURES, LLC, as successor in interest to Bedeviled LLC; MILLENNIUM MEDIA, INC.; COLOSSAL MOVIE PRODUCTIONS, LLC; YAR

PRODUCTIONS, INC.; MILLENNIUM IP, INC.; KILLING LINK DISTRIBUTION, LLC; BADHOUSE STUDIOS, LLC; LHF PRODUCTIONS, INC.; VENICE PI, LLC; RAMBO V PRODUCTIONS, INC.; MON, LLC; SF FILM, LLC; SPEED KILLS PRODUCTIONS, INC.; NIKOLA PRODUCTIONS, INC.; WONDER ONE, LLC; BODYGUARD PRODUCTIONS, INC.; OUTPOST PRODUCTIONS, INC.; GLACIER FILMS I, LLC; DEFINITION DELAWARE LLC; HANNIBAL CLASSICS, INC.; DALLAS BUYERS CLUB, LLC; STATE OF THE UNION DISTRIBUTION AND COLLECTIONS, LLC; SCREEN MEDIA VENTURES, LLC; 42 VENTURES, LLC, joined parties, collectively Movie Company Creditors, ("Creditors"),

Appellees.

---

**BRIEF OF THE DEBTOR-APPELLANT**

---

Charles Muszynski, Pro se
P. O. Box 1423
Basseterre
St. Christopher, W.I.
424-333-0569
usfilefolder@protonmail.com

# Table of Contents

I. Table Of Authorities...............................................................4

II. Jurisdictional Statement..............................................13

III. Statement Of The Issues.........................................14

IV. Statement Of The Case...........................................15

V. Summary Of The Arguments.....................................17

VI. Argument..........................................................18
    i. Standard of Review..............................................18
    ii. Discussion.......................................................19

VII. Conclusion.......................................................53

# I. TABLE OF AUTHORITIES.

## A. Statutes, Rules, and Others.

11 U.S.C. §105.............................................................................52

11 U.S.C. §105(a).........................................................................32

11 U.S.C. §109.......................................14, 15, 17, 19, 20, 21, 22, 27, 37, 53

11 U.S.C. §109(h)...................................................30, 31, 33, 36

11 U.S.C. §109(h)(1)..............................................................27, 35

11 U.S.C. §109(h)(2).........................................................27, 28, 29, 30

11 U.S.C. §109(h)(2)(A)...............................................................28

11 U.S.C. §521.......14, 16, 17, 19, 20, 21, 22, 37, 38, 39, 40, 41, 43, 43, 45, 46, 50, 51, 52, 53, 54

11 U.S.C. §541(c)(2).................................................................42

11 U.S.C. §554(c)......................................................................41

11 U.S.C. §554(d).....................................................................41

11 U.S.C. §704.....................................................................41, 51

11 U.S.C. §704(a)(4)...............................................................41, 51

11 U.S.C. §704(4)......................................................................52

11 U.S.C. §707(a)...........................................14, 17, 19, 31, 32, 52, 54

11 U.S.C. §707(c)(3)...................................................................29

28 U.S.C. §158(a)(1)...................................................................35

28 U.S.C. §158(a)-(c)..................................................................13

28 U.S.C. §1408.......................................................................15

F.R.B.P. 1009.........................................................................39

F.R.B.P. 5009......................................................................43, 51

F.R.B.P. 5009(a).......................................................................51

F.R.B.P. 9023(59(e) And 60(b))....................................................16, 40

2 Collier on Bankruptcy ¶ 105.01[2] at 105-06
(16th ed. 2013))...................................................................39, 42

Bankruptcy Ethics, an Oxymoron. (emphasis added) ...............................39

Committee Notes F.R.B.P. 1009.......................................................39

DPR General Order 05-06..............................................................41

https://www.justice.gov/ust/list-credit-counseling-agencies-
approved-pursuant-11-usc-111.........................................................29

## B. Cases and Secondary Sources.

876*876 Law of the Case Doctrine.....................................................34

*Adams v. Finlay*, 2006 WL 3240522 at *2............................................31

*Aja v. Emigrant Funding Corp.* (In re Aja),
442 B.R. 857, 860 (B.A.P. 1st Cir. 2011)..............................................18

*American Dev. Int'l Corp.*, 188 B.R. 925, 932 (N.D. Tex. 1995)....................53

*American Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir.).........................53

*Ameriquest Mortg. Co. v. Nosek* (In re Nosek), 544 F.3d 34, 44
(1st Cir. 2008)".......................................................................52

*Anderson*, 2008...................................................................................39

*Andreuccetti*, 975 F.2d 413, 416 (7th Cir. 1992))...............................53

*Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382,
75 L.Ed.2d 318 (1983)...........................................................................34

*Asociación de Titulares de Condominio Castillo v. DiMarco*
(In re Asociación de Titulares de Condominio Castillo),
581 B.R. 346, 354 (B.A.P. 1st Cir. 2018)...........................................13

*Bacardí Int'l Ltd. V. V. Suárez & Co.*, 719 F.3d 1, 9 (1st Cir. 2013)..............19

*Bain*, No. 08-13395, 2008 WL 2570831, at *2
(Bankr.E.D.Va. June 23, 2008)...........................................................33

*Barfield v. CSX Transp., Inc.*, 2017 WL 662012, at *6 n.3
(M.D. Fla. Feb. 17, 2017)...............................................................24, 26

*Bejarano v. BRAVO! FACILITY SERVICES, INC.*, 2017.........................39

*Blue Hills Bank*, 575 U.S. 496, 501, 135 S.Ct. 1686,
191 L.Ed.2d 621 (2015))........................................................................40

*Bonner*, 330 B.R. 880, 2005 WL 2136204, at *5
(6th Cir. BAP 2005).........................................................................41, 51

*Burrell*, 339 B.R. 664, 667 (Bankr. W.D. Mich. 2006)..........................39

*Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985)...................................39

*Clippard v. Bass*, 2007..........................................................................27

*Cohen v. Brown Univ.*, 101 F.3d 155, 167 (1st Cir.1996).......................35

*Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*,
41 F.3d 764, 770 (1st Cir. 1994))..........................................................35

*Coumbe*, 304 B.R. at 384.......................................................................42

*Cusano v. Klein*, 264 F.3d 936, 946 (9th Cir. 2001)................................38

*Danielle Madore f/k/a Danielle Jones, Debtor*; Nos. 06-10068,
06-10026, United States Bankruptcy Court, D. Vermont.........................30

*De Jounghe v. Lugo Mender* (In re De Jounghe),
334 B.R. 760, 765 (B.A.P. 1st Cir. 2005).........................................18

*Delta Resources, Inc.*, 54 F.3d 722, 726 (11th Cir. 1995).........................23

*Dixon v. LaBarge* (In re Dixon), 338 B.R. 383, 387
(B.A.P. 8th Cir. 2006)..............................................................18

*Donarumo v. Furlong* (In re Furlong), 660 F.3d 81, 87
(1st Cir. 2011).....................................................................38

*Eldorado Canyon Props.*, LLC, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014).......18

*Elmendorf*, 345 B.R. at 491.........................................................31

*Eun Joo Lee v. Forster & Garbus LLP*, 926 F.
Supp. 2d 482, 489 (E.D.N.Y. 2013)................................................38

*Field v. Mans*, 157 F.3d 35, 40 (1st Cir.1998).....................................35

*First Am. Title Ins. Co. v. Pifalo* (In re Pifalo), 379 B.R. 1,
4 (1st Cir. BAP).....................................................................35

*Fisher*, 486 B.R. 200, 206 (Bankr. D. Kan. 2013)..................................38

*FRONTIER INSURANCE GROUP, INC.*, 2018....................................52

*Furlong I*, 437 B.R. at 718, 719...............................................38, 40, 41

*Global Access Ltd. v. AT & T Corp.*, 987 F. Supp. 1459,
1461 (S.D. Fla. 1997)............................................................24, 26

*Gordon C. York, Inc. v. Kragness (In re Kragness)*,
58 B.R. 939, 944 (Bankr. D. Or. 1986)............................................42

*Graupner v. Town of Brookfield*, 450 F.Supp.
2d 119, 124 (D.Mass.2006)............................................................41

*Groover v. Walker*, 88 So. 2d 312, 313 (Fla. 1956)......................24, 26

*HARDING*, 2023.............................................................................38

*Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir.2005)..............34, 35

*Harris v. Luckey*, 918 F.2d 888, 894 (11th Cir. 1990)......................24, 26

*Henderson*, 364 B.R. 906, 915 (Bankr. N.D. Tex. 2007)....................36

*Hess*, 347 B.R. at 498, 500, 501 (Bankr.D.Vt.2006)...............30, 31, 36

*Hewlett v. State*, 661 So. 2d at 115 (Fla. 4th DCA 1995)...................24

*Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d
939, 940 (10th Cir. 1989))..............................................................53

*Hunger*, 272 B.R. at 796...............................................................42

*Jamo v. Katahdin Fed. Credit Union* (In re Jamo),
283 F.3d 392, 403 (1st Cir. 2002).....................................................52

*Jean Raoul PETIT-LOUIS*...............................................................30

*Koshkalda*, 2020.........................................................................33

*Kuehn v. Cadle Co.*, No. 5:04-cv-432-Oc-10GRJ,
2007 WL 809656, at *4 (M.D.Fla. March 15, 2007).............................40

*Law v. Siegel*, ___ U.S. ___, 134 S.Ct. 1188,
1195, 188 L.Ed.2d 146 (2014)........................................................41

*Lawyers Co-op. Pub. Co. v. Williams*, 149 Fla. 390, 392 (Fla. 1942).........25, 26

*Linton*, 2021.............................................................................33

*Lynette Marie Beavers* (2022).......................................................51

*MALIN*, 2023......................................................40

*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127
S.Ct. 1105, 166 L.Ed.2d 956 (2007)...............................33

*Matter of Modern Warehouse, Inc.*, 1987...........................25

*Matter of Plantation Restaurant of Houma, Inc.* 45
B.R. 229, 231 (Bkrtcy. W. D. Ark.1984).........................25, 26

*Mattingly, No. 08-10883-WCH*, 2008 WL 2559387,
at *1 (Bankr. D. Mass. June 23, 2008)............................36

*McGrahan*, 2011...................................................35

*Mendez*, 367 B.R. at 114..........................................39

*Mercado v. Combined Invs.*, LLC (In re Mercado),
523 B.R. 755, 761 (B.A.P. 1st Cir. 2015).........................18

*Michael FURLONG*..................................................41

*Michael R. HESS, Debtor*..........................................30

*Midland Asphalt Corp. v. United States*, 489 U.S.
794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).......36

*Miller*, 336 B.R. 232 (Bankr. W.D.Pa.2006)........................39

*Mohring*, 142 B.R. 394-395, 389 (Bankr.E.D.Ca. 992)............41, 51

*Negron-Almeda v. Santiago*, 579 F.3d 45, 50-51 (1st Cir.2009).....35

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121
S.Ct. 1808, 149 L.Ed.2d 968 (2001)..............................32, 33

*Payne v. Wood*, 775 F.2d 202, 205, 207 (7th Cir. 1985)........38, 41, 51

*People v. Riva* (2003) 112 Cal.App.4th 981, 991..................25

*Pifalo*, 379 B.R. at 4.................................................................35

*Plattner Implement Co. v. Int'l Harvester Co.*,
133 F. 376, 378–79 (8th Cir. 1904).....................................24

*Remexcel Managerial Consultants, Inc. v. Arlequin*,
583 F.3d 45, 53 (1st Cir.2009)..........................................34

*Ricketts v. Strange*, 2017.................................................39

*Rios*, 336 B.R. 177, 179 (Bankr. S.D.N.Y. 2005)..................32

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589
U.S. 35, 140 S. Ct. 582, 586-87, 205 L.Ed.2d 419 (2020)...............23, 39, 40

*Roberts v. Boyajian* (In re Roberts), 279 B.R. 396, 399
(B.A.P. 1st Cir. 2000), aff'd, 279 F.3d 91 (1st Cir. 2002)....................18

*Roumeliotis v. Popa* (In re Popa), 214 B.R. 416, 418
(B.A.P. 1st Cir. 1997), aff'd, 140 F.3d 317 (1st Cir. 1998)..................18

*Segarra-Miranda v. Acosta-Rivera* (In re Acosta-Rivera),
557 F.3d 8 (1st Cir. 2009).................................................33

*Sheskey v. Tyler-Smith*, 118 Ohio Misc.2d 169,
770 N.E.2d 161, 164 (Ohio Com.Pl.2002)..........................38, 42

*Shoup v. McDermott*, No. 3:18CV968, 2018
WL 3328861, at *1 (N.D. Ohio July 6, 2018)........................13

*Pal Family Tr. v. Ticor Title Ins.*, 490 B.R.
480, 482 (S.D.N.Y. 2013).................................................13

*Smart World Technologies, LLC*, 423 F.3d 166, 184 (2d Cir.2005)...............52

Smith, 352 B.R. 729, (Bankr. W.D.N.Y. 2006).......................38, 42

*Sonnax Indus., Inc. v. Tri-Component Prods. Corp.*,
907 F.2d 1280 (2d Cir. 1990).............................................23

*Sowinski v. Califorina Air Resources Board*...........................................23

*Spencer*, 388 B.R. 418 (Bankr. D.C. 2008)..............................................52

*State v. Gary*, 609 So. 2d 1291, 1293 (Fla. 1992).....................................24

*Stevenson v. Four Winds Travel, Inc.*, 462 F.2d
899, 904–05 (5th Cir. 1972)........................................................24, 25, 26

*Taal*, 504 B.R. at 686.................................................................18, 28

*Togut v. Hecht* (In re Hecht), 54 B.R. 379, 384 (Bankr.
S.D.N.Y. 1985), aff'd, 69 B.R. 290 (S.D.N.Y. 1987).................................42

*Toledo Trust Co. v. Peoples Banking Co.* (In re Hartley),
52 B.R. 679, 685 (Bankr.N.D.Ohio 1985)..............................................42

*Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 741 (3d Cir. 1995)...........53

*UNITED STATES BAKERY v. SVENHARD'S SWEDISH BAKERY* ...............33

*United States v. Andrews*, 77 M.J. 393........................................33, 34

*Vázquez Laboy v. Doral Mortg. Corp.* (In re Vázquez Laboy),
647 F.3d 367, 372-73 (1st Cir.2011)....................................................34

*Vollmer*, 2007 WL 541747 (Bankr.E.D.Va. February 16, 2007)...................36

*Vollmer*, 361 B.R. at 813-15............................................................39

*Webb v. DAYMARK RECOVERY SERVICES, INC.*, 2023 ...................25, 27

*Werthen v. Werthen* (In re Werthen), 329 F.3d 269,
272 (1st Cir. 2003).......................................................................14

*West Elecs. Inc.*, 852 F.2d 79, 81-82 (3d Cir. 1988)...............................23

*Whitehouse v. LaRoche*, 277 F.3d 568, 573 (1st Cir.2002).......................34

*Wilkinson*, 346 B.R. at 545..............................................................52

*Williams*, 2005 WL 3752226 (Bankr. E.D.Ark. December 1, 2005)…....25, 26, 39

*Winn Dixie Stores, Inc. Erisa Litigation*, 2007 WL 1877887,
at *3 (M.D. Fla. June 28, 2007)…………………………………………..24, 26

*Wong v. City & (and) County*…………………………………………………...26

*Yellow Cab Co-Op. Ass'n,* 192 B.R. 555, 556 (D. Colo. 1996)…………………23

## II. JURISDICTIONAL STATEMENT.

The Court has jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court, 28 U.S.C. § 158(a)-(c). A bankruptcy court order dismissing a ch. 7 case is a final, appealable order. Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo), 581 B.R. 346, 354 (B.A.P. 1st Cir. 2018); see also Shoup v. McDermott, No. 3:18CV968, 2018 WL 3328861, at *1 (N.D. Ohio July 6, 2018); Pal Family Tr. v. Ticor Title Ins., 490 B.R. 480, 482 (S.D.N.Y. 2013).

*Creditors' vexation and harassment forced Appellant's pro se appearance after every prospective attorney averred due to their scandalous nature. Appellant made a good faith effort to comply with requirements and respectfully requests that if error(s) is noted, the Court consider allowing his *prompt* repair thereof.

## III. STATEMENT OF THE ISSUES.

ISSUE I. Was the BAP incorrect to affirm Dist. Puerto Rico's ("DPR") Dismissal despite DPR's disregard of law of the case, clear reliance on erroneous "factual" information instead of record evidence, abuse of discretion, de novo error, and denial of due process.

ISSUE II. Was the BAP incorrect to affirm DPR's Dismissal after DPR exceeded its authority and jurisdiction and relitigated then overturned precluded issues and law of the case E. Dist. Texas' ("EDTX") Final Orders determining Debtor's eligibility, compliance, and not dismissing but transferring on that basis to DPR.

ISSUE III. Was the BAP incorrect to affirm DPR's dismissal after it denied due process by refusing to hold a required §707(a) hearing to dismiss under §521, and prevented Debtor from showing DPR record evidence it clearly failed to review.

ISSUE IV. Was the BAP incorrect to affirm DPR's dismissal based on Creditors' unproven, issue precluded opinions to find Debtor: a) ineligible under §109, b) ineligible under §521, c) issue a vague, ambiguous OSC incongruous to its Dismissal, and require Debtor alter Forms and Schedules after estate distribution.

# IV. STATEMENT OF THE CASE.

### A. Nature of the Case.

The instant appeal of the BAP's affirmation seeks review of DPR's ch. 7, asset-less, pro se bankruptcy dismissal, DPR's failure to review or comprehend record evidence, failure to follow procedural requirements, and toleration of vexatious actions by a scandalous copyright troll lawyer on behalf of concealed litigants.

### B. Relevant Procedural History.

1.  11 May 2023, Doc. #1, voluntary Ch. 7 bankruptcy, EDTX.

2.  12 May 2023, Doc. #5, Order requiring Debtor "fulfill" counseling.

3.  13 May 2023, Doc. #18, Debtor "fulfill[s]", Counseling Certificate.

4.  31 May 2023, Doc. #17, Creditors Motion For Relief From Automatic Stay.

5.  2 June 2023, Doc. #176, trans., 1st of 3 scheduled 341(a) meetings, 45 mins.

6.  30 June 2023, Doc. #136, trans., Preliminary Hearing; 2nd 341 unnecessary.

7.  22 August 2023, Doc. #134 trans., Evidentiary and OSC Hearings held.

8.  23 August 2023, Doc. #79, "Order Granting In Part Order To Show Cause And Transferring Venue of Case Under 28 U.S.C. §1408 And Denying In Part Order To Show Cause Why Debtor's Case Should Not Be Dismissed For Lack Of Eligibility Under 11 U.S.C. §109"; and ECF, 1st Trustee distributed estate.

9.  15 Sept. 2023, Doc. #93, DPR strikes 3rd 341(a), 4th 2004 exam invitation.

10. 13 Feb. 2024, Doc. #165, "Motion Requesting Immediate Disqualification Of Creditors' Legal Representation".

11. 28 Feb. 2024, Doc. #169, DPR Status Conference; OSC, Doc. #172, Debtor

must alter schedules and resubmit; Doc. #173, "Submission of Certificates Of Completion For Credit Counseling Courses"; trans., Doc. #177

12. 29 Feb. 2024, Doc. #174, "Submission Of Certificates Of Completion For Credit Counseling Course And Form 423B".

13. 20 Mar. 2024, Doc. #178, "Debtor's Amended Filings For Sua Sponte Order Doc. #172".

14. 26 Mar. 2024, Doc. #179, "Debtor's Response To Sua Sponte Order To Show Cause And For Information, Third Of Three".

15. 31 Mar. 2024, Doc. #180-1, "Creditors' Reply To Debtor's Responses [Docs. ##173 174 and 179] To Order To Show Cause [Doc. #172]"

16. 2 April 2024, Doc. #181, "Debtor's Response, Objection, And Request For Evidentiary Hearing To Creditors' Improper Motion For Leave To Reply."

17. 29 April 2024, Doc. #184, "Amended Motion Requesting Clarification For Report Of No Distribution Or Alternatively Requiring Trustee File Under 11 U.S.C. §521."

18. 21 May 2024, Doc. #185, DPR "Order and Opinion", Dismissal.

19. 15 Jun. 2024, Doc. #193, "Amended Motion To Vacate, Set Aside, Or Amend Under Bankruptcy Rule 9023 (59(e) And 60(b)) Motion To Vacate".

20. 25 Jun. 2024, DPR "Opinion And Order", Doc. #206, vacate Motion denied.

## V. SUMMARY OF ARGUMENTS.

1. DPR abused its discretion, clearly relied on erroneous "facts", sua sponte acted as third Trustee, then improperly Dismissed based on Movie Company Creditors' ("Creditors"), falsehoods, lies of omission, and issue-precluded opinions, not record fact. DPR refused to hold a required 707(a) hearing, denied due process, prevented Debtor showing record evidence proving eligibility and disclosure compliance, and ignored Trustees' objection-less estate distribution.

2. Ignorant of record facts, relying on Creditors' issue preclude opinions and lies, DPR issued an ambiguous, vague, mortally flawed OSC that conflicted with Dismissal's "facts", the purported basis to dismiss.

3. DPR acted as an appellate court but lacked authority or jurisdiction to overturn an equivalent prior court's determination(s), final judgment(s), precluded issues, and law of the case. DPR did not cite factual record evidence to dismiss pursuant to §109 or §521 and, without evidentiary hearing, a vague, ambiguous OSC absent record facts and based on Creditors' falsehoods was issued.

# VI. ARGUMENTS.

## A. Standard Of Review.

1. The Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Eldorado Canyon Props., LLC, 505 B.R. 601, 603 (B.A.P. 1st Cir. 2014); see also Werthen v. Werthen (In re Werthen), 329 F.3d 269, 272 (1st Cir. 2003). The dismissal of a ch. 7 case is reviewed for an abuse of discretion. See In re Eldorado Canyon Props., LLC, 505 B.R. at 603; Roberts v. Boyajian (In re Roberts), 279 B.R. 396, 399 (B.A.P. 1st Cir. 2000), aff'd, 279 F.3d 91 (1st Cir. 2002); Dixon v. LaBarge (In re Dixon), 338 B.R. 383, 387 (B.A.P. 8th Cir. 2006); see also In re Taal, 504 B.R. at 686. "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." In re Eldorado Canyon Props., LLC, 505 B.R. at 603-04 (citation and internal quotation marks omitted).

2. Appellate courts reviewing bankruptcy decisions generally apply de novo review to conclusions of law and the "clearly erroneous" standard to findings of fact. See Aja v. Emigrant Funding Corp. (In re Aja), 442 B.R. 857, 860 (B.A.P. 1st Cir. 2011). "A bankruptcy court's order dismissing a debtor's case should be over-turned only if the debtors establish that the bankruptcy court committed a clear abuse of discretion." Roberts v. Boyajian (In re Roberts), 279 B.R. 396, 399 (B.A.P. 1st Cir. 2000) (citing Roumeliotis v. Popa (In re Popa), 214 B.R. 416, 418 (B.A.P. 1st Cir. 1997), aff'd, 140 F.3d 317 (1st Cir. 1998). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." De Jounghe v. Lugo Mender (In re De Jounghe), 334 B.R. 760, 765 (B.A.P. 1st Cir. 2005). A court abuses its discretion if it "relies upon an improper factor, neglects a factor entitled to substantial weight, or considers the correct mix of factors but makes a clear error of judgment in weighing them." See Mercado v. Combined Invs., LLC (In

re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015) (quoting Bacardí Int'l Ltd. V. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013)).

## B. Discussion.

### i. *DPR de novo error usurped appellate authority and abused discretion*.

1. Seven hundred ninety-one (791) days ago, 11 May 2023, pro se Debtor filed an asset-less ch. 7 in good faith. Trustee #1 investigated without objection, 4 proceedings determined Debtor eligible pursuant to §109 and disclosures exceeded §521 requirements, the estate was distributed, not dismissed, then transferred to DPR, where 687 days later, its second appeal was filed.

2. Before a 3rd objection extension ended 23 Oct. 2023, Creditors filed their 3rd one-Doc. #124, "Motion To Dismiss Bad Faith Bankruptcy Case With Prejudice For Twelve Months, And For An Award of Attorney's Fees". DPR ignored it.

3. For 791 days, vexatious Creditors' frivolous fabrications, precluded issues, and lies of omission bamboozled courts until DPR adopted the fanciful falsehoods and improperly relitigated and overruled issue precluded Final Orders for Debtor's eligibility and disclosure compliance pursuant to §109 and §521, and distribution. DPR refused to hold a required §707(a) hearing to prevent Debtor from presenting facts evidencing DPR's Order, Doc. #185, p.9, improperly relitigated prior, issue precluded matters and improperly presumed to act as an appellate court finding:

We conclude that the Debtor has filed incomplete and inaccurate schedules and statement of financial affairs and thus, has failed to comply with his duty of full disclosure pursuant Section 521 of the Bankruptcy Code. Furthermore, Debtor has also failed to fully comply with our court order at the hearing to provide all the required information. For the aforementioned reasons of lack of eligibility to be a bankruptcy debtor, lack of proper disclosure, and failure to comply with a court order, the instant case is dismissed.

4. *Debtor again appeals **DPR's 2024 Dismissal** for improper basis in DPR's flawed presumption of appellate authority, where it lacked jurisdiction or authority to relitigate and overturn precluded issues, final orders, and predicating law of the case determining Debtor's eligibility as qualification for transfer to DPR in 2023.*

5. *Debtor is **not appealing** if EDTX properly found eligibility and compliance pursuant to §109 and §521 after Debtor "...fulfill[ed] the credit counseling requirement" for cause, without timely objection, as Ordered by Doc. #5:*

> **IT IS THEREFORE ORDERED** that Debtor should fulfill the credit counseling requirement immediately but in any case not later than **Friday, May 26, 2023**. If such requirement is fulfilled prior to this date, the Court would hope that parties in interest would elect to waive this eligibility issue in light of Debtor's *pro se* status, thereby avoiding a possible pointless re-filing and the necessity of conducting a stay continuation hearing.

6. Devoid of authority or jurisdiction, DPR relitigated then overturned 2023's Final Orders after the 1st 341(a), 2 June 2023 and Preliminary Hearing, 30 June 2023 and OSC and Evidentiary Hearings, 22 Aug. 2023 and 1st Trustee's estate distribution 23 Aug. 2023 predicating transfer to DPR without objection or appeal.

7. DPR Dismissed, Doc. #185, ignored overwhelming record evidence, law of the case, Debtor's pleas for hearings, and required Debtor retroactively re-prove eligibility despite scrupulous compliance in good faith unchallenged by either

EDTX, any party, or Trustee with 35+ years' experience who investigated Debtor's disclosures and told him to stop sending information, that no more was required, then waived the 2nd 341(a), 30 June 2023, Doc. #136, p.39, l.22 – p.40, l.24, after 40+ creditors waived Debtor's §109 and §521 eligibility and compliance. DPR Ordered Debtor retroactively alter Forms and Schedules the 1st Trustee relied upon to distribute the estate in 2023 that a 2nd Trustee affirmed. Nothing was left for EDTX to do after 22 Aug. 2023 but transfer an eligible, compliant Debtor to DPR.

8. Thereafter, no new record evidence was introduced. In the 28 February 2024 "Status Conference" no record facts were reviewed and DPR's abused discretion to re-litigate and reversed precluded issues, Final Orders, Trustees' determinations, and committed de novo error to Dismiss by solely relying on vexatious Creditors' scandalous lawyer's disproven, issue precluded opinions. Creditors' lawyer is under investigation for jailable, criminal offenses in Debtor's jurisdiction in a related case, repeatedly volunteered to testify in the instant matter and, with unadmitted co-counsel Joel B. Rothman, were ordered to repay over $260,000.00 in fees and costs for similar abusive "practice" where Debtor's case originated, S.D. Florida. Their fee-splitting scam succeeded Prenda Law's incarcerated lawyers' one, backed by Avi Lerner and Trevor Short, and offshore third-party litigation funding run by Ben Perino's PML Process Management Limited, LLC,

the _concealed principal litigant_ and director of their barratrous pettifoggery and abuse of courts' resources, Docs.## 158, 165.

9. Space prevents showing Creditors' manifest lies and omissions. A sampling is a "Motion for Relief from Automatic Stay", Doc. #17 recognizing Debtor was Ordered to "fulfill the credit counseling requirement" for eligibility, yet lied to the Court, claimed Debtor did not timely do so, but knew Debtor had within hours, Doc. #18. Creditors' Doc. #17 proved they understood their waiver of objection to Debtor's eligibility. They never again raised the time-barred issue as basis to oppose Debtor's eligibility in EDTX and Docs. ##17 and 51, Creditors' motion for injunctive relief, were denied, by Final Order, Doc. #79, predicating DPR transfer.

10. BAP Opinion, Case 24-11, Doc. #57, p.15, ignored record evidence in favor of Creditors' lies and, like Creditors' Doc. #17, BAP's Opinion confirmed Creditors' understood Debtor's fulfillment of Doc. #5, established eligibility and no party, irrefutably, timely objected, making it a precluded issue in 2023.

11.Debtor eligible, Creditors' vexation resulted in a first, the only Preliminary Hearing Trustee heard of in 25 years, where no party objected to Debtor's §109 eligibility or §521 disclosure despite EDTX Judge Searcy inviting both 1st Trustee and Creditors' lawyer to do so if they thought it improper, trans. Doc. #136, p.28:

all some things to think about. One is either, Mr. Zayler, or, Mr. Culpepper, if you all think that Mr. Muszynski is not eligible to be a debtor under Section 109 of the Bankruptcy Code, the way that you raise that is not in a stay relief motion. It is in a motion to dismiss. So, you know, you all want to look at that and file something, file away. And

12. "Orders denying or granting relief from the automatic stay are final and appealable." See In re Delta Resources, Inc., 54 F.3d 722, 726 (11th Cir. 1995); Sonnax Indus., Inc. v. Tri-Component Prods. Corp., 907 F.2d 1280 (2d Cir. 1990); In re West Elecs. Inc., 852 F.2d 79, 81-82 (3d Cir. 1988) (order denying relief from the stay is final and appealable if it is based on a rejection by the bankruptcy court of the legal basis or theory offered by the creditor for lifting the stay); In re Yellow Cab Co-Op. Ass'n, 192 B.R. 555, 556 (D. Colo. 1996) ("Orders granting or denying relief from the [Bankruptcy] Code's automatic stay provisions are appealable final orders.")

13. In re: Ritzen Group Inc. v. Jackson Masonry LLC, the Supreme Court unanimously held that a bankruptcy court's order denying relief from the automatic stay constitutes a final order, and thus that order may—and must—immediately be appealed if so desired.

14. See, In re: Delta Resources, Inc., 54 F.3d 722, 726 (11th Cir. 1995); Sonnax Indus., Inc. v. Tri-Component Prods. Corp., 907 F.2d 1280 (2d Cir. 1990); In re West Elecs. Inc., 852 F.2d 79, 81-82 (3d Cir. 1988) (order denying relief from the stay is final and appealable if it is based on a rejection by the bankruptcy court of the legal basis or theory offered by the creditor for lifting the stay); In re Yellow Cab Co-Op. Ass'n, 192 B.R. 555, 556 (D. Colo. 1996) ("Orders granting or denying relief from the [Bankruptcy] Code's automatic stay provisions are appealable final orders.")

15. DPR ignored the general rule against successor judge reversals to overturn Final Orders on matters of law, which undermines faith in the judiciary, decision stability, perpetuated litigation, and usurped appellate allocation. If a matter of discretion, DPR might only modify after a substantial change in circumstances;

"law of the case" is supposed to prevent reconsideration of prior judges:

"Such limits are necessary to promote stability of decisions and to avoid unseemly contests and differences. [State v. Gary, 609 So. 2d 1291, 1293 (Fla. 1992)]. Thus, in the instant case, the chief judge **exceeded his authority** by vacating a colleague's order in an appellate fashion."

16. Hewlett v. State, 661 So. 2d at 115 (Fla. 4th DCA 1995) ("one circuit judge cannot reverse the prior order of another circuit court judge.") (emphasis added); see also Groover, 88 So. 2d at 313 (even where rehearings or reconsiderations may be technically authorized and within the trial court's inherent authority, in these circumstances "an appeal should be taken rather than application made to another circuit judge.").

17. U.S. Circuit Judge Sandborn stated anything else "would be intolerable": "The rule itself, and a careful observance of it, are essential to the prevention of unseemly conflicts, to the speedy conclusion of litigation, and to the reasonable administration of the law, especially in the national courts, where many judges are qualified to sit at the trials, and are frequently called upon to act in the same cases. It is unavoidable that the opinions of several judges upon the many doubtful questions which are constantly arising should sometimes differ, and a rule of practice which would permit one judge to sustain a demurrer to a complaint, another of co-ordinate jurisdiction to overrule it and to try the case upon the theory that the pleading was sufficient, and the former to then arrest the judgment, upon the ground that his decision upon the demurrer was right, would be intolerable. It has long been almost universally observed." Stevenson v. Four Winds Travel, Inc., 462 F.2d 899, 905 (5th Cir. 1972) (quoting Plattner Implement Co. v. Int'l Harvester Co., 133 F. 376, 378–79 (8th Cir. 1904)).

18. A general rule accepted in all U.S., State, civil, and criminal courts: "The policy underlying this rule is self-evident. Chief Judge Hatchett best expressed it by stating: '[w]hen the outcome of a case changes simply because the membership of a court changes, the public's respect for the legal system is eroded.' Harris v. Luckey, 918 F.2d 888, 894 (11th Cir. 1990)."For more case law, see also Barfield v. CSX Transp., Inc., 2017 WL 662012, at *6 n.3 (M.D. Fla. Feb. 17, 2017) (refusing to grant motion to reconsider prior judge's decision on summary judgment, under this general rule); In re Winn Dixie Stores, Inc. Erisa Litigation, 2007 WL 1877887, at *3 (M.D. Fla. June 28, 2007) (quoting Global Access Ltd. v. AT & T Corp., 987 F. Supp. 1459, 1461

(S.D. Fla. 1997) ("overturning the ruling of a predecessor judge is an exceptional step, not to be taken lightly."); Stevenson v. Four Winds Travel, Inc., 462 F.2d 899, 904–05 (5th Cir. 1972) ("The rule in most of the national courts [] is that where a judge [] renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge [], the latter judge should respect and not overrule such decision and order."); Lawyers Co-op. Pub. Co. v. Williams, 149 Fla. 390, 392 (Fla. 1942).

19. If EDTX acted improperly, timely appeal was the remedy yet every party waived. DPR cited no record evidence nor "appellate authority" to reanimate long precluded issues, other than Creditors' unsworn opinions and "For the reasons stated in open court...", a baseless OSC, Doc. #172, ¶1, required record info be redundantly served to DPR to again disprove Creditors' precluded falsehoods.

20. "Even if it was in reality an erroneous decision, which it seems in retrospect to be, this court would be obliged to follow it under normal circumstances." - in Matter of Modern Warehouse, Inc., 1987

21. "This court does not in any respect purport to undo or modify the decision of Judge Barker. Even if it was in reality an erroneous decision, which it seems in retrospect to be, this court would be obliged to follow it under normal circumstances." See, e.g., Matter of Plantation Restaurant of Houma, Inc. 45 B.R. 229, 231 (Bkrtcy. W. D. Ark.1984)

22. "The Fourth Circuit, as have other circuits, cautions that when one judge enters an order, a reviewing judge "should be hesitant to overrule the earlier determination." - in Webb v. DAYMARK RECOVERY SERVICES, INC.

23. "The rule in most of the national courts that have passed on the question is that where a judge...or a judge assigned to a... Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order."- in MATTER OF PLANTATION MANOR RESTAURANT OF HOUMA, 1984.

24. "As this court held in People v. Riva (2003) 112 Cal.App.4th 981, 991, as a

`general rule one trial judge cannot reconsider and overrule an order of another trial judge. "[F]or reasons of comity and public policy."

25. The policy underlying is self-evident; Chief Judge Hatchett best expressed: '[w]hen the outcome of a case changes simply because the membership of a court changes, the public's respect for the legal system is eroded.' Harris v. Luckey, 918 F.2d 888, 894 (11th Cir. 1990)." See also Barfield v. CSX Transp., Inc., 2017 WL 662012, at *6 n.3 (M.D. Fla. Feb. 17, 2017) (refusing to grant motion to reconsider prior judge's decision on summary judgment, under this general rule); In re Winn Dixie Stores, Inc. Erisa Litigation, 2007 WL 1877887, at *3 (M.D. Fla. June 28, 2007) (quoting Global Access Ltd. v. AT & T Corp., 987 F. Supp. 1459, 1461 (S.D. Fla. 1997) ("overturning the ruling of a predecessor judge is an exceptional step, not to be taken lightly."); Stevenson v. Four Winds Travel, Inc., 462 F.2d 899, 904–05 (5th Cir. 1972) ("The rule in most of the national courts [] is that where a judge [] renders a decision and makes a judicial order in such case, and thereafter the case is transferred to the calendar of another judge [], the latter judge should respect and not overrule such decision and order."); Lawyers Co-op. Pub. Co. v. Williams, 149 Fla. 390, 392 (Fla. 1942) ("A successor judge generally cannot review, modify or reverse, upon the merits, on the same facts, the final orders of his predecessors unless there exists some special circumstances such as mistake or fraud perpetrated on the court."); Groover v. Walker, 88 So. 2d 312, 313 (Fla. 1956) ("The Court is committed to the general proposition that a successor judge may not correct errors of law committed by his predecessor and he cannot review and reverse on the merits and on the same facts the final orders and decrees of his predecessor.").

26. Exceptions exist only if the rule carries extreme, absurd results: "The rule in most of the national courts that have passed on the question is that where a judge...or a judge assigned to a... Court, while a case is on his calendar, renders a decision and makes a judicial order in such case, and thereafter the case is transferred to another judge of the same court, the latter judge should respect and not overrule such decision and order."- in MATTER OF PLANTATION MANOR RESTAURANT OF HOUMA, 1984

27. A latter judge should respect and not overrule a prior decision or order, it is: "essential to the prevention of unseemly conflicts, to the speedy confusion of litigation, and to the respectable administration of the law especially in the national courts, where many judges are qualified to sit at the trials, and are frequently called upon to act in the same cases - in Wong v. City & (and)

County: Discovery Sanctions and Law of the Case ... Even if it was in reality an erroneous decision, which it seems in retrospect to be, this court would be obliged to follow it under normal circumstances. - in Matter of Modern Warehouse, Inc., 1987

28. "This court does not in any respect purport to undo or modify the decision of Judge Barker. Even if it was in reality an erroneous decision, which it seems in retrospect to be, this court would be obliged to follow it under normal circumstances." See, e.g., Matter of Plantation Restaurant of Houma, Inc. 45 B.R. 229, 231 (Bkrtcy.W.D.Ark.1984)

29. The Fourth Circuit, as have other circuits, cautions that when one judge enters an order, a reviewing judge "should be hesitant to overrule the earlier determination." Id - in Webb v. DAYMARK RECOVERY SERVICES, INC., 2023

30. "This court is also persuaded by those courts that have held that "eligibility to be a debtor is not jurisdictional and that until a bankruptcy court determines eligibility, a case actually exists which cannot thereafter be deemed a nullity by simply `striking' the case as if it never existed. " - in Clippard v. Bass, 2007

31. Dismissal, Doc. #185, contradicts itself and its OSC and invents transcript context regardless of record evidence the precluded issues. DPR admitted Debtor's *residence* jurisdiction applies to §109(h)(2) then misapplied §109(h)(1) and §109 (h)(3), Doc. #185, p.3, 1.21. Debtor's residency, recognized by EDTX, was basis to Order, Doc. #5, Debtor "fulfill the credit counseling requirement" (a singular requirement – no exigent explanation required), and, as BAP Opinion found, EDTX "intrinsically" understood §109(h)(2) applied. DPR and its BAP admitted Debtor fulfilled Order, Doc. #5 within hours, OSC Hearing trans., Doc. #134, p.76, 1.16, proved Nevis residency, and Doc. #185, footnote #2, admitted residency then attempted to dismiss by reintroducing another issue already heard and precluded:

Creditors admit "The debtor lives in Nevis. He doesn't live in the United States.",

trans. Doc. #136, p.7, l.16. Record evidence, applicable law, and 40+ waivers were

ignored to claim, Doc. #185, p.4, Debtor "...ineligible to be a Debtor...":

> Given that Debtor did not meet the credit counseling requirement under § 109(h)(1) nor the requirements for a temporary waiver under § 109(h)(3), he is ineligible to be a Debtor in the present bankruptcy procedure.

No affirmative obligation required Debtor provide notice §109(h)(2) applied yet

Creditors falsely claimed otherwise, another precluded issues, Doc. 180-1, p.3, ¶1:

> Accordingly, Muszynski has failed to provide a reason why his case should not be dismissed for lack of eligibility for failing to timely obtain credit counseling as required by 11 U.S.C. §109(h) and the May 12, 2023 Order [Doc. #5].

DPR ignored Judge Searcy's examinations, 30 June 2023, a Preliminary Hearing,

trans. Doc. #136, OSC and Evidentiary Hearings, 22 Aug. 2023, trans. Doc. #134,

that Creditor's lawyer repeatedly volunteered to testify as a witness in the latter,

and EDTX overruled Creditors' testimony, "records", and "evidence", denied their

Motions, and Debtor eligible, trans. Doc. #134, p.79, l.6-p.81; Doc. #79.

32. DPR and its BAP ignored their own precedent, 1st Cir. BAP:

"Debtors unable to obtain approved credit counseling services are not, by statute, required to complete credit counseling, see 11 U.S.C. §109(h)(2)(A)." BAP In re Taal, 504 B.R. 682 (B.A.P. 1st Cir. 2014) Baboucar B. TAAL, Debtor."

33. DPR ignored the DSO raised by Creditors, Doc. #17, p.4, ¶2; in Debtor's

OSC reply, Doc. #179, p.11, ¶28; and Debtor's reply, Doc. #181, p.8, ¶21, and

Debtor's "Status Conference" statement, Doc. #177, p.7, l.3; p.9, l.6-10: "And my

ex-wife's DSO, which cannot be addressed until this action is settled…"; Debtor's

testimony, Doc. #134, p.33, l.19; p.63, l.9-16, and former spouse's testimony, p.89,

l.19: "So I'd like that consideration if it's not going to be, hopefully, discharged."

34. DPR ignored §707(c)(3):
"The court may not dismiss a case under paragraph (2) if the debtor stablishes
by a preponderance of the evidence that the filing of a case under this chapter is
necessary to satisfy a claim for a domestic support obligation."

35. DPR ignored the DOJ listed no counseling available where Debtor resides:

https://www.justice.gov/ust/list-credit-counseling-agencies-approved-pursuant-11-usc-111

36. Ignoring §109(h)(2), DPR adopting Doc. #180-1, based on Creditors' lies:

**A. Muszynski failed to timely obtain credit counseling as required by 11 U.S.C. §109(h) and**

**the May 12, 2023 Order [Doc. #5] in this case.**

In Muszynski's original petition, he stated, "There will be NO ISSUE with having the

course completed and reported to the Court by the end of business on 18 May [2023]." Doc. #1,

p.10. However, Muszynski now concedes that he did not complete the course until February 28,

2024. *See* Doc.#173, ¶¶1, 6, 8 (Note Muszynski's refers to 28 February **2024** in paragraph 1 but

Doc. #185 refers incorrectly to a petition date, not the date by which DPR admitted

Debtor was required to fulfil counseling, **26 May 2023**, at p.6, DPR stated:

Debtor's allegation and the certificate of credit counseling filed, Debtor obtained credit
counseling on May 13, 2023, which is two days after the petition date. Thus, Debtor did not
comply with the requirement of receiving a briefing from an approved credit counseling agency
within the 180 days period before his filing of the bankruptcy petition.

37. DPR ignored Debtor's showing it *residency* is not an option on Forms, Doc.

#178, p.9, Sched. Part 5, Q.15, "About Debtor 1", Box 4.

☐ I am not required to receive a briefing about credit counseling because of:

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes meincapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

38. DPR ignored papers, testimony, Forms, Schedules, Searcy's examination, Prelim, Evidentiary, OSC Hearings, Docs. ##136, p.28, l.8; and 134, p.17, l.13: p.15, l.8; p.18, l.14-p.20, l.23, and Debtor's repeated motions and denied hearings.

39. "The plain language of §109(h) makes clear that, as a general rule, if an individual seeking bankruptcy relief fails to file proof of pre-petition bankruptcy counseling and does not fulfill all of the procedural requirements for either a waiver or exemption, her bankruptcy case will be dismissed. However, when, under the totality of circumstances, enforcing the plain language of §109(h) would be both manifestly unjust and inconsistent with settled law interpreting related provisions of the bankruptcy code, the Court may exercise its discretion, grant an exemption, deny dismissal, and allow the case to proceed.", In re Michael R. HESS, Debtor; In re Danielle Madore f/k/a Danielle Jones, Debtor; Nos. 06-10068, 06-10026, United States Bankruptcy Court, D. Vermont.

40. "The relevant inquiry under section 109(h)(2) is what counseling was available to the Debtor before he filed. The fact that the U.S. Trustee has now discovered that counseling may have been available — information which the U.S. Trustee was not aware of at the initial hearing — bears no relevance to the Debtor's waiver request. The available counseling was inadequate for Mr. Petit-Louis at the time that he sought to file his petition, and he was entitled to a waiver of counseling pursuant to section 109(h)(2) on this basis. Accordingly, it is ORDERED AND ADJUDGED that the Trustee's Motion for reconsideration is DENIED. [1] Official Form 1 only provides debtors with the option to request a waiver on account of "exigent circumstances" and not for lack of availability of adequate services. – In re Jean Raoul PETIT-LOUIS

41. Google Scholar shows no 1st Circuit waiver for §109(h) but provides:

"In re Elmendorf, 345 B.R. at 491 ("… Congress did not intend for debtors' protections under BAPCPA to be limited in a future bankruptcy filing where a debtors' failure to comply with §109(h) was obviously done out of ignorance …."); Adams v. Finlay, 2006 WL 3240522 at *2 ("The consolidated structure of BAPCPA is such that no rational pro se litigant or attorney would intentionally fail to satisfy Section 109(h).")."

42. "§109(h) is rather a *waivable* bankruptcy eligibility standard that a court may overlook, if no one is objecting and there are exceptional circumstances in which it may result in a manifest injustice to strictly enforce the statute. *See In re Hess,* 347 B.R. 489, 501 (Bankr.D.Vt.2006) (noting Supreme Court precedent for the proposition that judicial discretion is warranted where strict construction of a statute would result in manifest injustice, and also noting the discretion given to bankruptcy courts, at section 707(a), when presented with "cause" for dismissal of a case). The *Hess* court set forth six factors to consider when deciding whether to dismiss for "cause" for failure to comply with section 109(h): (a) whether the debtor filed the case in good faith; (b) whether the debtor took all reasonable steps to comply with statutory requirements; (c) whether the debtor's failure to comply was the result of circumstances beyond the debtor's control; (d) whether the debtor's conduct meets the minimum requirements of section 109(h); (e) whether any party would be prejudiced by allowing the case to proceed; and (f) whether there are any unique equitable factors that tip the balance in one direction or the other."

43. The *Hess* court reasoned: The plain language of §109(h) makes clear that, as a general rule, if an individual seeking bankruptcy relief fails to file proof of pre-petition bankruptcy counseling and does not fulfill all of the procedural requirements for either a waiver or exemption, her bankruptcy case will be dismissed. However, when, under the totality of the circumstances, enforcing the plain language of §109(h) would be both manifestly unjust and inconsistent with settled law interpreting related provisions of the bankruptcy code [e.g. section 707(a)], the Court may exercise its discretion, grant an exemption, deny dismissal, and allow the case to proceed."

44. Had Debtor *not* fulfilled Doc. #5, dismissal is reserved for extraordinary,

bad faith filers in punitive cases, which Debtor is not. Evidence *inapplicability and*

*waiver without objection* that exists in one direction axiomatically has equivalency

and validity in the opposite direction.

> "Even in cases where bankruptcy attorneys fail to notify clients of the
> counseling requirement, courts have granted 30-day extensions and in cases
> where Debtors failed to obtain credit counseling or seek an extension thereof,
> and the court denies the requests for extension on the merits, see In re Rios, 336
> B.R. 177, 179 (Bankr. S.D.N.Y. 2005), it strikes the case where the debtor
> "neither sought credit counseling prior to filing the bankruptcy petition nor
> made the appropriate certification to the Court evidencing eligibility for an
> exemption."

*ii.*     *Precluded issues were barred, res judicata.*

45. Res judicata has broad practical applications and where its use was tested in

the 2018 patent case, <u>Sowinski v. California Air Resources Board</u>, application was

affirmed for cases resolved on the merits and on procedural grounds; as it is here.

> 46. Judicial estoppel "is an equitable doctrine that protects the integrity of the
> judicial process." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808,
> 149 L.Ed.2d 968 (2001).

> 47. "When a party assumes a certain position in a legal proceeding and
> convinces the Court to accept that position, that party may not thereafter
> assume a contrary position." Id. Thus, the purpose of judicial estoppel is, like
> that of § 105(a) of the Bankruptcy Code, largely "to prevent an abuse of
> process." 11 U.S.C. §105(a).

*iii.*     *Manifest injustice.*

48. DPR refused repeated Debtor pleas for a hearing, dismissed without a

required §707(a) hearing and compounded the manifest injustice afterwards by

overturning Final Orders without any party seeking to preserve an interlocutory

objection. DPR thwarted EDTX's intent to avoid pointless litigation a year prior.

49. Even some courts that adopt a mandatory-dismissal approach to §109(h) have acknowledged that estoppel provides an exception to otherwise strict adherence. In re Bain, No. 08-13395, 2008 WL 2570831, at *2 (Bankr.E.D.Va. June 23, 2008).

50. Finding the doctrine of judicial estoppel applicable to §109(h) is also consistent with the Supreme Court's recent decision in Marrama v. Citizens Bank of Mass., 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), and the First Circuit's decision in Segarra-Miranda v. Acosta-Rivera (In re Acosta-Rivera), 557 F.3d 8 (1st Cir. 2009).

51. Judicial estoppel "is an equitable doctrine that protects the integrity of the judicial process." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). "When a party assumes a certain position in a legal proceeding and convinces the Court to accept 308*308 that position, that party may not thereafter assume a contrary position." Id. Thus, the purpose of judicial estoppel is, like that of § 105(a) of the Bankruptcy Code, largely "to prevent an abuse of process." 11 U.S.C. § 105(a).

52. Per the 9th Circuit: "Litigants in bankruptcy who are unsure about the finality of an order [should] file a notice of appeal to preserve their rights whether the matter was final or interlocutory - in In re Koshkalda, 2020.

53. "If the finality status of an order is uncertain, the best course is to file a Notice of Appeal and a Motion for Leave to Appeal under Rule 8004 in case it is concluded it is not a final order. - in In re Linton, 2021.

54. "This approach to finality is driven by the realization that `certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be [immediately] appealable as of right.'" - in UNITED STATES BAKERY v. SVENHARD'S SWEDISH BAKERY, 2021

55. "United States v. Andrews, 77 M.J. 393 (stare decisis is defined as the doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation...)"

56. Stare decisis, "to stand by things decided," is supposed to prevent error:

"United States v. Andrews, 77 M.J. 393 (stare decisis is defined as the doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation; the doctrine encompasses at least two distinct concepts...: (1) an appellate court must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself; and (2) courts must strictly follow the decisions handed down by higher courts; adherence to precedent is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process; an appellate court will not overturn precedent that has been treated as authoritative for a long time unless the most cogent reasons and inescapable logic require it; stare decisis is most compelling where courts undertake statutory construction; the party requesting that a court overturn precedent bears a substantial burden of persuasion)."

### *iv.* *DPR ignored law of the case doctrine.*

57. DPR recognized eligibility then struck 3rd scheduled 341(a), and a 4th time, suggested a 2004; none ever held due to timely, scrupulous compliance, Doc. #93:

```
     The court orders STRICKEN FROM THE RECORD IN ITS ENTIRETY the United
States Trustee's notice on Docket No. 92. The court clarifies that the last day
to oppose the discharge or challenge whether certain debts are dischargeable
was already extended to October 23, 2023 (Docket No. 81). The deadline to object
to exemptions has expired. The 341 Meeting of Creditors was concluded on June
30, 2023 and entered on the docket on July 12, 2023. If the current trustee
wishes to examine the Debtor, he may avail himself of the Rule 2004 examination.
     IT IS SO ORDERED.
```

58. 876*876 Law of the Case Doctrine: "The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy), 647 F.3d 367, 372-73 (1st Cir.2011); Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 53 (1st Cir.2009) (quoting Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)); Harlow v. Children's Hosp., 432 F.3d 50 (1st Cir.2005); Whitehouse v. LaRoche, 277 F.3d 568, 573 (1st Cir.2002).

59. The doctrine "is a prudential principle that 'precludes relitigation of the

legal issues presented in successive stages of a single case once those issues have been decided.'" Field v. Mans, 157 F.3d 35, 40 (1st Cir.1998) (quoting Cohen v. Brown Univ., 101 F.3d 155, 167 (1st Cir.1996)).

60. See Negron-Almeda v. Santiago, 579 F.3d 45, 50 (1st Cir.2009) (citations omitted). First, the mandate rule, "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." Id. (citation omitted). For a bar to exist under the mandate rule, an issue must have been "`actually considered and decided by the appellate court,' or ... be `necessarily inferred from the disposition on appeal.'" Field v. Mans, 157 F.3d 35 at 40 (citing Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd., 41 F.3d 764, 770 (1st Cir. 1994)). The second "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." Negron-Almeda, 579 F.3d at 50-51 (citation omitted).

61. First Am. Title Ins. Co. v. Pifalo (In re Pifalo), 379 B.R. 1, 4 (1st Cir. BAP 2007); see also Harlow v. Children's Hospital, 432 F.3d at 55 (citations omitted) (holding that law of the case doctrine is not applicable if prior ruling was interlocutory matter)."

62. In re Pifalo, 379 B.R. at 4 (holding that final orders that are not appealed become the "law of the case"; "The law of the case doctrine `posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" - in In re McGrahan, 2011

63. Regardless, a final order in a bankruptcy case may address the issue of a debtor's eligibility under 11 U.S.C. §109(h)(1), especially if there were questions or challenges related to the credit counseling requirement. Every party waived and Doc. #5, was a Final Order after the right to timely appeal, 28 U.S.C. §158(a)(1), expired. Eligibility was affirmed, for cause, complied with Legislative intent, conserved resources, prevented manifest injustice, the case transferred, and nothing was left for EDTX to do after Debtor "fulfill[ed]" and was determined eligible.

64. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted)

65. "Based upon the court's interpretation of congressional intent, the court found the debtors' continued participation in the debt repayment plan within the 180-day window pre-petition fulfilled the "spirit," if not the technical requirements, of §109(h) and, on equitable grounds, refused to dismiss the case. - in The Exigent Circumstances Exception to the Pre-Petition Credit Counseling

66. Courts waive counseling requirements where a debtor's case has been fully

administered, is ripe for discharge, and no prejudice ensues by proceeding:

See, In re Mattingly, No. 08-10883-WCH, 2008 WL 2559387, at *1 (Bankr. D. Mass. June 23, 2008) (waiving the requirement where the debtor reasonably attempted to comply, no party in interest objected, and the case was fully administered); In re Henderson, 364 B.R. 906, 915 (Bankr. N.D. Tex. 2007) (concluding debtors made "earnest attempts" to comply and "an injustice would occur" if court did not allow case to proceed); In re Hess, 347 B.R. at 498 & 500 (concluding courts have discretion to dismiss a case based on a debtor's failure to meet the eligibility requirement of §109(h) in cases "where to decline to exercise discretion would result in manifest injustice" and there was no prejudice to creditors); see also In re Vollmer, 361 B.R. at 813-15 (excusing compliance with the requirements of §109(h) where compliance was impossible by virtue of debtor's incarceration, as debtor had no access to either a telephone or the internet).

67. DPR ignored Debtor's OSC response, Doc. #172, p.2, ¶2, "…why the case

should not be dismissed for lack of eligibility to be a debtor pursuant to 11 U.S.C.

§109(h).", that that OSC "intrinsically" acknowledged his eligibility to appear, and

ignored repeated proof counseling was fulfilled in hours, without objection, Docs.

#######173, 174, 176, 177, 179, 181, 182, 188, to adopt Creditors issue precluded

*"...timing requirements for the credit counseling briefing..."* as basis to dismiss yet simultaneously confirmed Debtor had fulfilled the requirement, Doc. #185, p.6:

> In response to the order to show cause as to why the case should not be dismissed for lack of eligibility to be a debtor, pursuant to 11 U.S.C. §109(h)(1), Debtor's only response is that he timely paid and completed the preliminary credit counseling course on May 13, 2023. As per Debtor's allegation and the certificate of credit counseling filed, Debtor obtained credit counseling on May 13, 2023, which is two days after the petition date. Thus, Debtor did not comply with the requirement of receiving a briefing from an approved credit counseling agency within the 180 days period before his filing of the bankruptcy petition.
>
> Given that Debtor did not meet the credit counseling requirement under § 109(h)(1) nor the requirements for a temporary waiver under § 109(h)(3), he is ineligible to be a Debtor in the present bankruptcy procedure.

68. Creditors' vexation contradicted issue precluded facts, Doc. #180-1, p.3-4:

> "Further, Muszynski states that his address is "Church Ground", see Doc.#178, p.3, but in the underlying case, Muszynski stated under oath in a notarized affidavit dated April 14, 2023 that his address is "Fig. Tree, #1". Doc. #74-5, p.2";

And DPR reprised the precluded issue, ignorant of record fact, in Doc. #172, p.1:

> "For the reasons stated in open court, the Debtor is ordered...to fully disclose... (1) an Amended Voluntary Petition disclosing his current residential address..."

*v.*     *Issue precluded §521 requirements, off limits to DPR, belong to Trustee.*

69. The proceeding case law, law of the case, and precluded issue examples underpinning Debor's eligibility pursuant to §109, equally apply to his compliance with disclosure requirements pursuant to §521 and OSC responses, likewise

founded improperly on precluded issues DPR had no authority or jurisdiction to

raise, review, or overturn, clearly ignorant of record evidence and testimony.

70. Overwhelming record evidence proved Debtor exceeded §521 disclosure

requirements and was instructed by both Trustees to stop providing more:

"Section 521(a)(1) requires that certain documents be filed. Automatic dismissal follows, however, only if the debtor has failed to file "all of the information required under subsection (a)(1)" in a timely fashion. Several courts have noted the distinction and opined that if the necessary information can be discerned from whatever documents the debtor did file, the case is not subject to dismissal. In re Smith, 352 B.R. 729, (Bankr. W.D.N.Y. 2006)";

71. "The only requirement is that debtors produce honest and accurate; schedules that are specific enough to allow a trustee in bankruptcy to conduct an adequate investigation into their financial affairs." Furlong, 437 B.R. at 719.", and "A brief description suffices where it gives the trustee enough information to further inquire, if he elects to do so. In re Fisher, 486 B.R. 200, 206 (Bankr. D. Kan. 2013).", and; This is so because whether a claim of exemption contains adequate information to put the trustee on notice is an objective determination, based solely on the face of the debtor's schedules, not subjective intentions.- in IN RE HARDING, 2023.

72. "While a "debtor has a duty to prepare schedules carefully, completely, and accurately," generally, an asset is adequately scheduled if its description exhibits "reasonable particularization under the circumstances." - in In re Furlong, 2011.

73. "Such detail, however, is neither required nor in the Court's experience common for a debtor's official schedule of assets under 11 U.S.C. § 521. It is well established that such a schedule need only reasonably identify the assets to parties in interest." Eun Joo Lee v. Forster & Garbus LLP, 926 F. Supp. 2d 482, 489 (E.D.N.Y. 2013), citing Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001) (schedule adequate where "listing was not so defective that it would forestall a proper investigation of the asset"). See also Donarumo v. Furlong (In re Furlong), 660 F.3d 81, 87 (1st Cir. 2011) (citation and internal quotation marks omitted) ("generally, an asset is adequately scheduled if its description exhibits reasonable particularization under the circumstances"); Payne v. Wood, 775

F.2d 202, 205, 207 (7th Cir. 1985) (debtor required only to "do enough itemizing to enable the trustee to determine whether to investigate further"); 4-521 Collier on Bankruptcy ¶ 521.06[1] (16th ed. 2017): "There are no bright-line rules for how much itemization and specificity is required [in the debtor's schedules of assets and liabilities]. A debtor is required to be as particular as is reasonable under the circumstances. The purpose of the schedules is to give interested parties sufficient information to decide whether they want to engage in further inquiry."

74. "Although the duty of disclosure is clear,[11 USC § 521] does not address the degree of detail required"- in Bejarano v. BRAVO! FACILITY SERVICES, INC., 2017.

75. "In the context of a cause of action, many courts have held that "the Bankruptcy Code does not require every component of a cause of action to bespelled out on a debtor's schedule." - in Ricketts v. Strange, 2017.

76. DPR ignored Rule 1009's 1983 notes, to sua sponte act like a *third* Trustee:

"The rule does not continue the provision permitting the court to order an amendment on its own initiative. Absent a request in some form by a party in interest, **the court should not be involved in administrative matters affecting the estate.**" "noting committee report has been cited as proof of Congressional intent to allow bankruptcy planning no matter how inequitable it may be" – in <u>Bankruptcy Ethics, an Oxymoron</u>, 5 Am. Bankr. Inst. L. Rev. 1 (1997). (emphasis added)

77. In re Vollmer, 2007 WL 541747 (Bankr.E.D.Va. February 16, 2007); In re Miller, 336 B.R. 232 (Bankr. W.D.Pa.2006); In re Williams, 2005 WL 3752226 (Bankr. E.D.Ark. December 1, 2005); In In re Anderson, 2008; In re Vollmer, 2007 WL 541747 (Bankr.E.D.Va. February 16, 2007); In re Miller, 336 B.R. 232 (Bankr. W.D. Pa. 2006); In re Williams, 2005 WL 3752226 (Bankr. E.D.Ark. December 1, 2005); In re Mendez, 367 B.R. at 114; In re Burrell, 339 B.R. 664, 667 (Bankr. W.D. Mich. 2006); In IN RE ANDERSON, 2008.

78. In the bankruptcy context, however, a judgment or order is considered "final" as long as it resolves a "proceeding"—even if it does not resolve the entire case. See Ritzen Grp., Inc. v. Jackson Masonry, LLC, 589 U.S. 35, 140 S. Ct. 582, 586-87, 205 L.Ed.2d 419 (2020); In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985). This is because bankruptcy cases often "encompass[]

numerous `individual controversies,... which would exist as stand-alone lawsuits but for the bankrupt status of the debtor,'" and which are "linked, one dependent on the outcome of another." Ritzen, 140 S. Ct. at 586-87 (quoting Bullard v. Blue Hills Bank, 575 U.S. 496, 501, 135 S.Ct. 1686, 191 L.Ed.2d 621 (2015)). Delaying appeal of a decision that resolves a discrete controversy early on in a bankruptcy case therefore carries a risk of substantial inefficiency in the event of a reversal, i.e., the bankruptcy court could have to "un-ravel" several subsequent adjudications "rendered in reliance on [the] earlier decision." Id. at 587.

79. No party requested DPR re-examine Debtor's issue precluded eligibility or disclosure compliance after 23 Aug. 2023, Order, Doc. #79, No Trustee objected to Debtor's compliance or appeared in either appeal. DPR had no authority to act like a *third* Trustee, review financials without a party's request or qualification to do so:

> "A debtor's schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted." - in IN RE MALIN, 2023."

80. DPR ignored "Debtor's Response, Objection, And Request For Evidentiary Hearing To Creditors' Improper Motion For Leave To Reply", Doc. #181, ¶25, detailing his compliance, and Doc. #182, "Motion Requesting Clarification Of Report Of No Distribution Or Alternatively Requiring Trustee File Under 11 U.S.C. § 521", and Doc. #188, "Motion to Vacate, Set Aside, Or Amend Under Bankruptcy Rule 9023 (59(e) And 60(b))", and Preliminary, Evidentiary, and OSC Hearing testimony, and record evidence that ***proved compliance***:

Once an asset is referenced on a schedule, § 521(a)(1) does not specify the

level of detail with which that asset must be described. See Furlong I, 437 B.R. at 718 (quoting Kuehn v. Cadle Co., No. 5:04-cv-432-Oc-10GRJ, 2007 WL 809656, at *4 (M.D.Fla. March 15, 2007)) ("The statute does not provide any guidance as to the level of specificity required" when listing assets on a bankruptcy schedule.) (alteration omitted); see also In re Mohring, 142 B.R. 389, 395 (Bankr.E.D.Ca. 1992) ("There are ... no bright-line rules for how much itemization and specificity is required" on a bankruptcy schedule.), aff'd, 153 B.R. 601 (9th Cir. BAP 1993), aff'd, 24 F.3d 247 (9th Cir.1994);

81. While a "debtor has a duty to prepare schedules carefully, completely, and accurately," generally, an asset is adequately scheduled if its description exhibits "reasonable particularization under the circumstances." In re Mohring, 142 B.R. at 394-95; see also Payne v. Wood, 775 F.2d 202, 205 (7th Cir.1985)("It would be silly to require a debtor to itemize every dish and fork...."). As "investigation is part of the Trustee's duties under § 704," see In re Bonner, 330 B.R. 880, 2005 WL 2136204, at *5 (6th Cir. BAP 2005); 11 U.S.C. § 704(a)(4), a debtor is required only to "do enough itemizing to enable the trustee to determine whether to investigate further," Payne, 775 F.2d at 207;

82. In re Michael FURLONG, "However, like any other property, claims that are disclosed by the debtor to the bankruptcy court may be abandoned by the trustee to the debtor. A debtor has a duty to disclose all assets to the bankruptcy court on a schedule, including legal claims. 11 U.S.C. § 521(a)(1); Graupner v. Town of Brookfield, 450 F.Supp.2d 119, 124 (D.Mass.2006). If an asset has been formally scheduled under § 521(a)(1) but has not been administered by the trustee when the estate is closed, the asset is abandoned to the debtor by operation of law. 11 U.S.C. § 554(c).[4] However, property that is neither administered nor abandoned (including property not properly scheduled that was never administered) remains property of the estate. 11 U.S.C. § 554(d).

83. DPR and its BAP ignored DPR's own General Order:

"General Order 05-06, District Puerto Rico, directs debtors not to file with the Court information required by § 521(a)(1)(B)(iv), but, rather, to provide it to the trustee and interested creditors and further provides that "[f]ailure of debtor to comply with the requirements of [§] 521(a)(1)(B)(iv) will result in automatic dismissal under [§] 521(i)(1)."

84. "The Court held that Bankruptcy Code Section 105(a), which enables the

bankruptcy court to issue any order or process in aid of its jurisdiction, did not permit the bankruptcy court to disregard the plain language of the more specific statutes "Law v. Siegel, ___ U.S. ___, 134 S.Ct. 1188, 1195, 188 L.Ed.2d 146 (2014), ("It is hornbook law that § 105(a) `does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code'") (quoting 2 Collier on Bankruptcy ¶ 105.01[2] at 105-06 (16th ed. 2013))."; and,

85. "A waiver can be either express or constructive and can be inferred from conduct. Toledo Trust Co. v. Peoples Banking Co. (In re Hartley), 52 B.R. 679, 685 (Bankr.N.D.Ohio 1985). "As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy." Sheskey v. Tyler-Smith, 118 Ohio Misc.2d 169, 770 N.E.2d 161, 164 (Ohio Com.Pl.2002)."; and, a beneficiary of a spendthrift trust:

"[does] not acquire or become entitled to any distribution until the trustees actually [make] a distribution." In re Hunger, 272 B.R. at 796; see also Gordon C. York, Inc. v. Kragness (In re Kragness), 58 B.R. 939, 944 (Bankr. D. Or. 1986); Togut v. Hecht (In re Hecht), 54 B.R. 379, 384 (Bankr. S.D.N.Y. 1985), aff'd, 69 B.R. 290 (S.D.N.Y. 1987). Consequently, a debtor's interest in a testamentary spendthrift trust is excluded from the bankruptcy estate pursuant to § 541(c)(2), but any distribution a debtor receives within 180 days after commencement of the case becomes property of the estate. See In re Coumbe, 304 B.R. at 384; In re Hunger, 272 B.R. at 796."

86. DPR ignored boastful Creditors declared they "…are well-versed in the Debtor's financial affairs…", ' Doc. #17, p.10, ¶2, and ignored Trustee confirmed he had Creditors' (useless) information to start investigating, Doc. #136, p.12, l.19:

```
the debtor.  And then on May the 30th, I received
documentation from Ms. Waddell and a very large amount of
documentation from Mr. Culpepper.  So I began to review that
```

Neither Trustee faulted Debtor's eligibility or disclosure compliance and neither acted on Creditors' "well-versed" information, irrelevant to Debtor's bankruptcy.

*vi.*    *No §521 disclosure "failures" existed to justify dismissal.*

87.Even Creditors' recognized discharge was nigh, trans. Doc. #177, p.12:

> I should note that when the court -- when this present Court struck the scheduled meet of the creditors at docket entry 93, the trustee took the position that his duties had been relieved by that order.

Yet, reprised precluded trust issues in unsworn statements and filings and DPR

followed their improper narrative and required Debtor again send information

already on the record, heard under sworn hearing testimony, administered by two

Trustees that distributed the estate in 2023 and ignored Debtor's Doc. #182,

"Motion Requesting Clarification Of Report Of No Distribution Or Alternatively

Requiring Trustee File Under 11 U.S.C. § 521" drawing DPR's attention to 5009.

88. Like Creditors' lies about Debtor's issue precluded address, the false "Status

Conference" claims, trans. Doc. #177, p.12, l.25-p.13, l.11, and filing, Doc. #180-

1, p.5, ¶1, lied to DPR, stating:

> "On March 20, 2024, Debtor filed an amended Schedule A/B which disclosed, for the first time, that he is a beneficiary, of not one but of two trusts… As to the information on how the trusts are funded, Debtor limited his disclosure by stating that "[e]ach trust was funded when established." The Debtor omitted disclosure of the amount of funds transferred to each of the trusts upon their creation and their current balance."

Ignorant of record facts, DPR went whole cloth in Dismissal, Doc. #185, p.8, l.4:

> "On March 20, 2024, Debtor filed an amended Schedule A/B which disclosed, for the first time, that he is a beneficiary, of not one but of two trusts… As to the information on how the trusts are funded, Debtor limited his disclosure by

stating that "[e]ach trust was funded when established." The Debtor omitted disclosure of the amount of funds transferred to each of the trusts upon their creation and their current balance."

DPR incorporated Creditors' lies to Dismiss, Doc. #185, p.6, B.:

B. Disclosure Requirements - Section 521

In addition to not being eligible to be a debtor in the present bankruptcy, Debtor has also failed to comply with disclosure requirements, pursuant to 11 U.S.C. § 521.

Record facts eviscerated Creditors' lies and DPR ignored that on *2 June 2023*, 1st Trustee had disclosures before, during, and after the 341(a) with letters from trust attorneys showing all legally permissible information. DPR did not ask 2nd Trustee any substantive question in "Status Conference"; trans. Doc. #176, p.16, l.10; p.17, l.32; p.21, l.1; p.25, l.23-p.27, l.32. And didn't know Debtor *exceeded requirement* Doc. #176, p.16, l.22-p.17, l.9., or that Trustees recognized trusts irrelevant 2 June 2023, Doc. #176, p.26, l.8 – p.27, l.12, or see them included in "Debtor's Response To Sua Sponte Order To Show Cause And For Information, Third Of Three", and Doc. #179, ¶13, Exhibits 1 and 2 – the 2 June 2023 email with letters attached. Besides irrelevant, not part of the estate, out of Debtor's control, and precluded issues, no money was available for Debtor. ALL these issues were repeatedly verified in hearings and two Trustees and in record evidence and were the basis to distribute the estate 23 August 2023. Here's the copy of the email to 1st Trustee:

**Trust attorney letters; Case 23-90112; Muszynski**

From   usfilefolder <usfilefolder@protonmail.com>
To     Stephen J. Zayler<zayler@suddenlinkmail.com>
Date   Friday, June 2nd, 2023 at 10:59 AM

Mr. Zayler:

We spoke earlier today at the 341 meeting. These are the two letters I'd mentioned that the attorney for the trust told me about. Please let me know if you need anything else.

Sincerely,

Charles

Sent with Proton Mail secure email.

**1.93 MB**   2 files attached

20230602 Dusko Popov Representation Letter June 2023.pdf 989 46 kB    20230602 FA Hayek Representation Letter June 2023.pdf 988 12 kB

89. Debtor Docs. ###181, ¶25, 182, 188, _and_ testimony in Preliminary, Evidentiary, and OSC Hearings in 2023 proved compliance, zero objections, and Trustees' confirmations, trans, Doc. #136, p.11, l.12-15, 1st 341(a) continued, p.13, l.8-l.10, _Trustee's_ statutory duties (not DPR's), p.15, l.5, Judge Searcy's summary, p.31, l.10-l.19, and conclusion of 2nd 341(a), Doc. #136, p.32, l.17, p.40, l.7-l.11.

90. DPR failed a record review and mistakenly, Doc.#185, p.9, l.7-17, stated:

"On June 30, 2023, the date in which the continued 341 meeting was supposed to be held, the Texas Bankruptcy Court instead held a preliminary hearing on a Motion for relief from stay….The case record does not show that the 341 continued for June 30, 2023, _nor any other 341 meeting, was ever held. Thus, contrary to what Debtor asserts, Debtor was not examined by the Trustee on the information requested related to the trust(s)…_" (emphasis added)

"We conclude that the Debtor has filed incomplete and inaccurate schedules and statement of financial affairs and thus, has failed to comply with his duty of full disclosure pursuant Section 521 of the Bankruptcy Code."

Debtor repeatedly asked DPR to whom it referred in plural, "_we_", "_our_". Was it the Court _and_ ch. 7 Trustee, or Creditors, or clerks? DPR never clarified.

91. DPR adopted Creditors' false narrative in Doc. #185, p.8, ¶4:

"In support of his assertion, Debtor submitted a copy of the transcript of the 341 meeting held on June 2, 2023. Docket No. 176. However, upon review of said transcript, we find that the same does not support Debtor's allegations.";

DPR's transcript "review" lacks page or line numbers and joins testimony, framed out of context, and misrepresents Trustee's and Debtor's testimony and filings and masks their truthful context, i.e., Debtor disclosed all he knew of trusts on 2 June 2023, his and Trustee's statements proved them not part of the estate, with spendthrift clauses, irrelevant in bankruptcy, , Doc. #185, p.8, l.25. DPR's "transcript" does not appear anywhere other in Doc. #185, on p.9, l.25-p.10:

does not support Debtor's allegations. In the transcript, the chapter 7 Trustee expresses:

"But basically what it says is, even if -- even if the trust -- even if the trust is not property of the estate because of possible spendthrift clause, at this moment I don't know that. And so it -- I'm going to need to have some information about that to see what that trust is, the name of it, where it's located, the Trustee, beneficiaries, and see if, in fact, it does have a spendthrift clause.

What my intention is to continue this case. It will be four weeks from today. It will be Friday June the 30th, 2023. And it's going to be at 12:00 noon, Central Time.

Again, I will go ahead and continue this case until Friday, June the 30th, 2023 at 12:00 p.m. Central Time." Docket No. 176.

Out of context, concocted testimony was DPR's unfounded OSC and Dismissal basis, Doc. #185, p.9, l.12-17, where it ignored both trustees' findings, to state:

"We conclude that the Debtor has filed incomplete and inaccurate schedules and statement of financial affairs and thus, has failed to comply with his duty of full disclosure pursuant Section 521 of the Bankruptcy Code."

*vii.* _DPR's baseless, vague, ambiguous, OSC was incongruous to Doc. #185._

92.Debtor arrived at the 20 Feb. 2024 "Status Conference" prepared to participate in procedural aspects to progress the case to a hearing. Without prior notice to, or invitation from parties, on its own initiative, DPR used a "procedural" conference as an evidentiary hearing and promulgated an unfounded, drastic, and misrepresentative, OSC devoid of fact. Had Creditors made such a request, Debtor would have said it "an ambush"; it was not an exercise of case management power.

93.In the "Status Conference", trans. Doc. #177, 2nd Trustee, Creditors' lawyer, and Debtor were present, nobody was sworn, no testimony taken, no record review occurred, no substantive question was asked of any party by the Court and DPR confirmed the "Status Conference's" purpose to Debtor, lest he withdraw to prepare otherwise, was: "It's just a status", trans. Doc. #177, p.3:

> MR. MUSZYNSKI: From what I read, the status conference was to determine how the case would proceed, what stipulations need to be made.
>
> THE COURT: Yes.
>
> MR. MUSZYNSKI: What discovery is outstanding. And arguments and evidence are not supposed to be brought up at this time. Is that correct?
>
> THE COURT: Correct. It's just a status.

94.The "evidentiary hearing" OSC, Doc. #172 was based entirely on Creditors' issue precluded opinions and lies and re-requiring Debtor, trans. Doc. #177, p.22:

statement of financial affairs. Although some of this information may have been provided to the trustee or maybe in the possession of the movie creditors, they need to be disclosed in the petitions -- in the schedules and the statement of financial affairs for the benefit of all creditors and the court.

So the debtor is ordered to show cause within twenty-eight days as to why the case should not be dismissed for debtor's failure to fully disclose his financial resources as required by the Bankruptcy Code. And that is pursuant to 11 United States Code Section 521. So specifically, the debtor

95. Precluded issues, settled law of the case, and final judgments were ignored and Debtor, without obligation, was required to redundantly provide information "for the benefit of..." Creditors that the record proved they already had and two Trustees investigated before distributing the estate. DPR required Debtor:

"disclosed in the petitions -- in schedules and the statement of financial affairs for the benefit of all creditors and the court." (Doc. #177, p.23, 1.21-p.24, 1.3)

The OSC drew from "Status Conference" utterances and Doc. #180-1; Doc.#172:

For the reasons stated in open court, the Debtor is ordered to show cause, within 28 days, as to why the case should not be dismissed for Debtor's failure to fully disclose his financial resources, as required by the Bankruptcy Code pursuant to 11 U.S.C. §521. The Debtor is further ordered to file: (1) an Amended Voluntary Petition disclosing his current residential address; (2) Amended Schedule A/B disclosing the following information in question number twenty-five (25): the name of the trust, the trust tax ID number (EIN), the trust address, the date in which the trust was created, who created the trust, how the trust is funded, details of the trust's assets, the name of the trustee or trustees and their addresses; (3) Amended Statement of Financial Affairs providing the complete information required in questions five (5) and question number twenty-seven (27). The Debtor's failure to comply with this order completely may result in the dismissal of the case.

The Debtor is also ordered to show cause, within 28 days, as to why the case should not be dismissed for lack of eligibility to be a debtor pursuant to 11 U.S.C. §109(h).

96.Debtor began replying in hours: Docs. ##173, 179, p.5, §9; Doc. #181, p.9, ¶23; Doc. #188, ¶s 3,4,6,32,33,34,35, and explained record evidence and precluded issues, for example: i) EIN/tax ID – *none existed*; ii) "trust" information (vaguely and ill-defined and singular) where *Debtor had no knowledge nor entitlement to*, iii) obtuse definitions: "including amounts or transfers to trust (singular language), balances" **(cited in the Dismissal but not an OSC requirement)**; iv) record evidence *two Trustees investigated and used to distribute*: address, bank records, stipend amount, trust name (singular), trustee info, defunct businesses Debtor worked, etc.; v) *ambiguous, vague requests*: "how trusts are funded" (what exactly? when formed, by whom, how formed, with what, what assets, where, before or after seeding, principal, rents, distributions, etc.?); vi) *requied Debtor alter schedules after* Trustees' 2023 distributed without objection, Doc. #178 evidences with exhibits 1, 2, 3.

97.In the Preliminary Hearing, 30 June 2023, Trustee testified to Debtor's scrupuleuse compliance, Doc. #176, p.19, l.5:

> What my intention is is to continue this case. It will be four weeks from today. It will be Friday June the 30th, 2023. And it's going to be at 12:00 noon, Central Time. That's because that's when my next date is, all right. I also have other cases going on that day, other Lufkin cases and so I anticipate it will be at 12:00, but be aware it could possibly be delayed a little bit if for some reason something earlier goes longer. I'm not anticipating that at this time.
>
> Let me also say, as I always say, if I request additional information from you and I obtain that information and I'm satisfied with the answers that you've given today and the information provided, it often happens that I say, you know what, contact my office a day or two ahead of time just to make sure, because it might not be necessary for you to actually show up at the meeting, even by teleconference, if I've got my answers.

Trustees had no further 341(a) and no 2004 examination was ever held. Debtor repeatedly served DPR record facts and motions disproving Creditors' lies, Docs. ####188, p.15, ¶45; 189, p.1, ¶4 ; 191, p.2, ¶8 ; 193, p.6, S.III.

98.DPR did not have jurisdiction or authority to redefine the definition of "compliance" and add language that does not exist, in Doc. #185, p.7, 1.10:

> "Compliance with §521 requires that all documents filed by a debtor be accurate and complete.",

nor Dismiss by ignoring the issues were precluded and wrong despite the claim for:

"…inaccuracy of the Schedules and Statement of Financial Affairs…", p.7, 1.20;

DPR is an adjudicative body, not a financial expert. It is devoid of the financial

expertise, experience, and legal authority two Trustees with 35+ years of practice

had and "evidence" from a "Status Conference" failed to prove noncompliance:

> At the Status Conference, Debtor was ordered to show cause as to why the case should not be dismissed for failure to comply with § 521. Given the inaccuracy of the Schedules and Statement of Financial Affairs filed by Debtor, the court also ordered Debtor to file amended Schedule A/B and Statement of Financial Affairs to disclose missing information. On March 20, 2024, Debtor filed amended documents and on March 22, 2024, Debtor filed his response to the order to show cause.

99. *Two* Trustees investigated Schedules A/B, Statement of Financial Affairs

without objection. On 23 August *2023*, Trustee's final report distributed the estate

which was affirmed 26 January *2024* by DPR's 2nd second Trustee; DPR ignored:

> "Pursuant to Federal Rule of Bankruptcy Procedure 5009, once the trustee files a final report and has certified that the estate has been fully administered, a party in interest or the United States Trustee has 30 days to file an objection, and if no objection is filed, there is a presumption that the estate has been fully administered and the Court will close the case. Fed. R. Bankr. P. 5009(a); 11 U.S.C. § 350(a).IN RE: Lynette Marie Beavers (2022)".

100. DPR ignored Doc. #182, "Motion Requesting Clarification Of Report Of

No Distribution Or Alternatively Requiring Trustee File Under 11 U.S.C. § 521".

and record facts and case law Debtor repeatedly provided proving compliance:

> "In re Mohring, 142 B.R. at 394-95; see also Payne v. Wood, 775 F.2d 202, 205 (7th Cir.1985) ("It would be silly to require a debtor to itemize every dish and fork...."). As "investigation is part of the Trustee's duties under §704," see In re Bonner, 330 B.R. 880, 2005 WL 2136204, at *5 (6th Cir. BAP 2005); 11 U.S.C. § 704(a)(4), a debtor is required only to "do enough itemizing to enable the trustee to determine whether to investigate further," Payne, 775 F.2d at 207.

101. "debtor required only to "do enough itemizing to enable the trustee to determine whether to investigate further" - in IN RE FRONTIER INSURANCE GROUP, INC., 2018

102. DPR usurped Trustees' authority without facts or authority, required Debtor alter issue precluded Schedules without a §704(4) intervening request, improperly acted like a *third* trustee, and DPR ignored:

In re Jackson, 348 B.R. 487 (Bankr. S.D. Iowa 2006) (court may not dismiss a case sua sponte based on § 521(i)(1)).

103. "In re Spencer, 388 B.R. 418 (Bankr. D.C. 2008)."Ordinarily, dismissal of a case under Chapter 7 of the Bankruptcy Code is governed by 11 U.S.C. § 707(a), which provides that the court "may dismiss a case under this chapter only after notice and a hearing and only for cause" Code § 105(a) clearly empowers a court to take action to prevent an abuse of process. However, that power has its limitations. As noted by the Court of Appeals for the Second Circuit, it "is the power to exercise equity in carrying out the provisions of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." In re Smart World Technologies, LLC, 423 F.3d 166, 184 (2d Cir.2005); see also Wilkinson, 346 B.R. at 545 (indicating that a court "cannot do violence to a specific statutory scheme in the name of equity" under the powers given it pursuant to Code § 105(a))";

104. The U.S. Court of Appeals for the First Circuit has warned that §105 "does not give bankruptcy courts `a roving writ, much less a free hand' to provide equitable relief." Id. (quoting Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 403 (1st Cir. 2002)). Section 105(a) "may not be invoked where the result of its application would be inconsistent with any other Code provision or it would alter other substantive rights set forth in the Code." Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 44 (1st Cir. 2008)".

105. DPR's invention of the legal standard for "accurate and complete", Doc. #185, p.7, l.10, required "Compliance with §521 requires that all documents filed by a debtor be accurate and complete.", then presumed authority to act like the 3rd

trustee. No Statute, Rule, or precedent requires detailed finality and DPR's actions provide a prima facia of why trustees' prevue is proscribed to them, not courts.

*viii.* *Creditors are not aggrieved, have no standing, improperly appear here.*

106. Although BAP's mangled Order Case 24-11, Doc. #23, p.12, Sec. II), thought Debtor's a ch. 13, it correctly Dismissed Creditors cross appeal, Case 24-14, Doc. #11, for lack of jurisdiction. Here, Creditors lack standing:

> "To have standing to appeal a bankruptcy court order, a party must be a "party aggrieved" by that order.", In re: Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737 (3d Cir. 1995) (comprehensive discussion of standing requirement for bankruptcy appeals); In re American Ready Mix, Inc., 14 F.3d 1497, 1500 (10th Cir.), cert. denied, 115 S. Ct. 77 (1994); Int'l Trade Admin. v. Rensselaer Polytechnic Inst., 936 F.2d 744, 747 (2d Cir. 1991).

> 107. "'This person aggrieved requirement is more exacting than the requirements for general Article III standing,'" In re: American Dev. Int'l Corp., 188 B.R. 925, 932 (N.D. Tex. 1995) (quoting In re Andreuccetti, 975 F.2d 413, 416 (7th Cir. 1992)); accord Travelers Ins., 45 F.3d at 741.

> 108. "is meant to be a limitation on appellate standing to avoid 'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'" American Ready Mix, 14 F.3d at 1500 (quoting Holmes v. Silver Wings Aviation, Inc., 881 F.2d 939, 940 (10th Cir. 1989)).

> 109. "Generally, only persons who are 'directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order.'" American Dev. Int'l Corp., 188 B.R. at 932 (quoting Andreuccetti, 975 F.2d at 416).

## V. CONCLUSION.

110. Debtor respectfully requests that, as BAP only commented on §109,

leaving §521 and OSC unaddressed, this Court take judicial notice of Debtor's

compliance with §521 and OSC requirements so in the event refiling occurs,

vexatious Creditors' false claims are neutered to conserve resources, save parties

protracted re-litigation, and prevent further manifest injustice where possible.

101.Debtor respectfully requests the Court reverse BAP's determination, Doc.

#241, that DPR did not abuse its discretion as clearly egregious errors inhabit the

case's tenure there, including denial of due process for a required §707(a) hearing,

which would likely have alleviated the necessity of two appeals, p.17, ¶2:

> Based on the above analysis, we conclude that the P.R. Bankruptcy Court did not abuse
>
> its discretion in deciding not to hold an evidentiary hearing and properly determined that the
>
> Debtor did not qualify to be a debtor. Because one ground is sufficient for dismissal, our
>
> analysis ends here, with a conclusion that the P.R. Bankruptcy Court did not abuse its discretion

102.Debtor respectfully requests should DPR's Order, Doc. #185, be reversed

that, upon return to DPR, a different judge be selected from rotation given even the

limited examples provided herein pattern exhibit a pattern of administrative

entropy and bias favoring the vexatious Creditors, hampering Debtor.

Respectfully Submitted,
10 July 2025

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO RULE 32(a)

1.This brief complies with the typeface requirements of Fed. R. App. P. 32(a)

(5), type style requirements of Fed. R. App. P. 32(a)(6) (it has been prepared in a

proportionally spaced typeface using Times New Roman 14 in Microsoft Word),

and applicable portions contain 12,544 words, as Rule 28.1(e)(2)(A)(i), applies.

Respectfully submitted, email from
St. Kitts and Nevis, W.I.
10 July 2025

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies


## CERTIFICATE OF SERVICE

The undersigned respectfully submits this filing and certifies it served on the
parties and entities named in the case by way of the Court's CM/ECF system upon
its entry therein after courier delivery submitted on the date below.

10 July 2025
Respectfully submitted,

Charles Muszynski, pro se
usfilefolder@protonmail.com
P. O. Box 1423
Basseterre
St. Kitts and Nevis
West Indies